# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3097-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

J.T.G.,

     Defendant-Appellant.

_____

> Submitted March 27, 2025 – Decided April 29, 2025
>
> Before Judges Mawla and Natali.
>
> On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Accusation No. 17-10-0967.
>
> Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).
>
> Jennifer Webb-McRae, Cumberland County Prosecutor, attorney for respondent (Stephen C. Sayer, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant J.T.G.[1] appeals from an April 3, 2023 order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

On October 26, 2017, defendant pled guilty to two third-degree counts of endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). In accordance with the negotiated plea agreement, the court sentenced him to concurrent five-year terms of imprisonment and parole supervision for life.

The charges related to allegations of sexual abuse made by the two minor daughters, A.D. and E.H., of defendant's former girlfriend, A.B. As detailed in defendant's presentence report, A.D., who was eight years old at the time, first raised defendant's abuse in a letter to her mother in which she explained defendant was "licking her private area." In a subsequent interview at the Cumberland County Prosecutor's Office, which the Division of Child Protection and Permanency (Division) also attended, A.D. stated defendant "would lick her vagina while her mother was at work, . . . [and] that [defendant] had done this to her on over [ten] occasions." According to A.B., these acts of sexual abuse took place over the two years she was dating defendant.

---

[1] We use initials to protect the identities of the child victims of sexual assault or abuse. R. 1:38-3(c)(9), (12).

A day after A.D.'s interview, the assigned Division caseworker reported that when questioned, "E.H. . . . indicated that she, too, had been touched by" defendant. In a later interview with the Cumberland County Prosecutor's Office, E.H. stated defendant "usually touched her over her clothing; however, on two occasions, he touched her breast under her shirt but over her bra. On one occasion, he had his hand on her leg. Typically, his hands would 'wander' over her body, touching her breasts, her vaginal area, and her buttocks." She further stated defendant would comment on her developing breasts and make her take several baths a day because "he didn't want a girl with a 'stinky front area[,] but a good-smelling front area.'"

According to E.H., defendant would tell her and A.D. "that he would break up with their mother if they didn't listen to him." E.H. also explained she and her sister were afraid to inform A.B. of defendant's abuse because he "showed them a picture of a gun inside a blue bin, and another picture of him holding a gun."

Defendant was subsequently charged under a complaint-warrant with: one count of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); one count of second-degree sexual assault, N.J.S.A. 2C:14-2(b); and two counts of third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1). As

3

noted, defendant pled guilty to the two third-degree endangering offenses, and the State agreed to dismiss the remaining charges.

At defendant's plea hearing, the following exchange took place with respect to defendant's waiver of his right to indictment by a grand jury:

> THE COURT: Prior to waiving your right to indictment, did you have enough time to go over your case with [your counsel], discuss the good points, the bad points, and is this the decision that you made in conjunction with your attorney?
>
> [DEFENDANT]: I can honestly say no.
>
> . . . .
>
> THE COURT: No, did you have enough [time] to review the case with your attorney?
>
> [DEFENDANT]: Yes and no.
>
> THE COURT: Okay. [Defendant's counsel], would you like some additional time with [defendant]?
>
> [DEFENDANT'S COUNSEL]: Judge, no, he's ready — as far as I know, he is prepared. We have gone over this case. We've gone over the good points, we've gone over the bad points, we've gone over the plea, what the penalties could be if he goes to trial, we've gone over everything.
>
> [DEFENDANT]: I would like to state for the record, Your Honor, that . . . I'm taking this plea at the advisement of my attorney, not because I feel that I'm guilty, but because he –

A-3097-22

THE COURT: Well then[,] I can't accept your guilty plea, sir.

. . . .

[DEFENDANT'S COUNSEL]: What do you want to do?

THE COURT: You have a right to go to trial and at trial, the State would have to prove you're guilty beyond a reasonable doubt. That's your right, sir. No one can take that away from you.

[DEFENDANT]: I'm accepting this by my own . . .

[DEFENDANT'S COUNSEL]: You are going to plead guilty of your own free will?

[DEFENDANT]: Yes.

[DEFENDANT'S COUNSEL]: Nobody's forcing you?

[DEFENDANT]: No, you're not forcing me –

[DEFENDANT'S COUNSEL]: You're not doing it for me, right?

[DEFENDANT]: No.

[DEFENDANT'S COUNSEL]: You're doing it for you?

[DEFENDANT]: I'm doing it for my own.

After explaining he had reviewed his case with counsel and was satisfied with his representation, defendant then provided a factual basis for his plea in

5

which he admitted to "touch[ing] both of the juvenile victims in their vaginal area." Satisfied with the factual basis, the court accepted defendant's plea and sentenced him as noted above.

Without challenging either his conviction or sentence on direct appeal and after completing his custodial term, defendant filed a timely pro se PCR petition in which he alleged A.D. and E.H. fabricated the allegations of sexual abuse because he ended his relationship with A.B. Specifically, defendant claimed he possessed "[newfound] evidence that prove[d] the charges against [him] were only made after [A.B.] and [defendant] broke up."

In his counseled brief, defendant asserted his counsel was constitutionally ineffective because he failed to investigate defendant's claim A.D. and E.H. had fabricated the charges and was unwilling to bring the case to trial. In support of these arguments, defendant submitted text messages and recordings of phone calls, which he contended were exculpatory. Additionally, defendant submitted a certification in which he attested his counsel "coerced [him] into taking a plea by telling [defendant] that [he] was guilty even though [he] was not, by not reviewing exculpatory information that [he] gave" to counsel. Defendant also stated counsel essentially forced him to accept the plea.

A-3097-22

After considering the parties' written submissions and oral arguments, the PCR court concluded defendant failed to satisfy the two-part test to establish a claim of ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984). It accordingly denied defendant's petition, issued a conforming order, and explained its decision in a thorough written opinion.

The PCR court rejected defendant's argument his counsel was ineffective for failing to investigate the text messages and phone call recordings, concluding defendant's contention failed under Strickland's performance-based prong. In doing so, the court found the evidence was not "facially exculpatory" and while it could have been used to impeach A.B. at trial, the text messages and recordings also "paint [defendant] in a poor light as [A.B. and defendant] are continuously arguing[,] and it comes to light that [defendant] was engaged in an ongoing affair as he was already married unbeknownst to [A.B.]"

Additionally, the court concluded counsel's advice to take the guilty plea was sound based on the lengthy custodial term "a guilty conviction at trial would carry compared to the comparatively lenient deal offered by the prosecutor." As the PCR court noted, defendant faced the possibility of two five-year consecutive sentences based on the endangering charges alone. It further explained if he was "found guilty of aggravated sexual assault as an extended

term eligible person, his sentence would have fallen between thirty years and life in prison subject to eighty-five percent parole ineligibility under the No Early Release Act."

The PCR court further rejected defendant's argument he was coerced to plead guilty and characterized the contention as "meritless based on the plea colloquy at the pre-indictment conference." It noted defendant could have told the judge he was not satisfied with counsel's representation, but instead confirmed several times he was pleading guilty without pressure from his counsel. Further, defendant responded in the affirmative when asked if he was satisfied with counsel's representation.

The PCR court also found defendant failed to establish grounds for withdrawing his guilty plea under State v. Slater, 198 N.J. 145, 156 (2009).[2] It concluded defendant was not entitled to withdraw his guilty plea because he did not make a colorable claim of innocence and he did "not set forth strong reasons for the withdrawal." The court did not assign much weight to the third factor

---

[2] In Slater, our Supreme Court set forth the following four factors courts are to "consider and balance" in evaluating motions to withdraw a guilty plea: "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused." 198 N.J. at 157-58 (citing United States v. Jones, 336 F.3d 245, 252 (3d. Cir. 2002)).

"due to the existence of a plea bargain in almost every guilty plea," and the State did not need to prove prejudice because "defendant failed to make a colorable claim on the first three prongs." The PCR court found "the errors described in [defendant's] pro se petition fall within the purview of acceptable trial strategy and thus the representation was competent within the meaning of the [Sixth] Amendment."

Before us, defendant raises the following contentions:

POINT ONE

[DEFENDANT] IS ENTITLED TO AN EVIDENTIARY HEARING ON HIS CLAIM THAT HIS ATTORNEY RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL PRETRIAL BY FAILING TO INVESTIGATE HIS CASE SUCH THAT HE FELT PRESSURED INTO A GUILTY PLEA.

POINT TWO

[DEFENDANT'S] GUILTY PLEA MUST BE SET ASIDE OR THE MATTER REMANDED FOR AN EVIDENTIARY HEARING.

In point one, defendant essentially reprises his argument before the PCR court that his counsel was constitutionally ineffective "by failing to investigate his case during the pretrial process so that he felt pressured to plead guilty despite his innocence." In support, defendant relies upon: the certification he

9

submitted before the PCR court; his statement at his plea colloquy; the presentence report, in which he told the probation officer he "pled guilty on the advice of his attorney, and that the instant charges were not brought against him until the victims' mother learned that he had 'cheated' on her"; and the text messages and phone call recordings.

Defendant contends the PCR court erred in rejecting this argument for several reasons. First, he asserts "the PCR court failed to view the evidence in a light most favorable to [defendant], as required." Second, defendant argues the PCR court erred in finding counsel made a strategic decision in light of defendant's sentencing exposure because "he had a strong defense, and he could have been found not guilty at trial, and therefore also would not be subjected to [p]arole [s]upervision for [l]ife." Further, despite the PCR court's finding the text messages and phone call recordings were not exculpatory, defendant maintains counsel had a duty to investigate defendant's claim because "the messages would tend to prove his innocence because they advance the defense theory that the charges were fabricated."

In point two, defendant contends he "presented a 'plausible basis' for withdrawal based on the validity of his plea and under the Slater factors, . . . is entitled to withdraw his plea." With respect to the first Slater factor, defendant

maintains he met his burden based upon his certification, the plea colloquy, his statement in the presence report, and the text messages and phone call recordings. Concerning the second factor, defendant argues his "counsel's ineffective assistance by failing to investigate [defendant's] defense is a strong reason for withdrawal." As to the third factor, defendant agrees with the PCR court this factor should not be afforded great weight "because so many cases are resolved through plea bargains." Regarding the fourth factor, defendant asserts he would gain no advantage as he has already served his sentence and would again face imprisonment, while the State would suffer little prejudice as "there is no indication from the [S]tate that it cannot locate witnesses," and "the [S]tate did not engage in extensive pretrial preparation."

Having reviewed the record and applying the relevant legal principles, we reject all of defendant's arguments and affirm substantially for the reasons set forth in the PCR court's thorough and well-reasoned written opinion. We add the following comments.

We review a judge's decision to deny a PCR petition without an evidentiary hearing for abuse of discretion. State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)). However, where no evidentiary hearing was conducted, we "may review the

11

factual inferences the court has drawn from the documentary record de novo." State v. Blake, 444 N.J. Super. 285, 294 (App. Div. 2016) (citing State v. Harris, 181 N.J. 391, 420-21 (2004)).

In Strickland, the Court established a two-part test to determine whether a defendant has been deprived of the effective assistance of counsel. 466 U.S. at 687; State v. Fritz, 105 N.J. 42, 58 (1987). Under the first prong, it must be demonstrated that counsel's handling of the matter "fell below an objective standard of reasonableness" and "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687-88. However, when considering a defendant's proofs, a court must show "extreme deference" in assessing defense counsel's performance, Fritz, 105 N.J. at 52, and "indulge a strong presumption that [it] falls within the wide range of reasonable professional assistance," Strickland, 466 U.S. at 689. To establish prejudice under the second prong, a defendant must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

"With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving [their]

right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012); see also State v. Goodwin, 173 N.J. 583, 593 (2002). A defendant must "do more than make bald assertions that [they were] denied the effective assistance of counsel" to establish a prima facie claim. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Defendant's failure to satisfy either prong of the Strickland standard requires the denial of a PCR petition. Nash, 212 N.J. at 542; Fritz, 105 N.J. at 52.

To demonstrate "prejudice after having entered a guilty plea, a defendant must prove 'that there is a reasonable probability that, but for counsel's errors, [they] would not have pled guilty and would have insisted on going to trial.'" Gaitan, 209 N.J. at 351 (quoting State v. Nuñez-Valdéz, 200 N.J. 129, 139 (2009)). A defendant must show that, "had [they] been properly advised, it would have been rational for [them] to decline the plea offer and insist on going to trial and, in fact, that [they] probably would have done so." State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011).

A request to withdraw a plea and a petition for PCR based on ineffective assistance of counsel are "distinct, and governed by different rules of court." State v. O'Donnell, 435 N.J. Super. 351, 368 (App. Div. 2014). "They must be considered separately." Ibid. A motion to withdraw a plea may be made after

sentencing "if the movant shows a 'manifest injustice.'" Ibid. (quoting R. 3:21-1).

We will not disturb a trial court's denial of a defendant's request to withdraw his guilty plea unless there was "an abuse of discretion which renders the lower court's decision clearly erroneous." State v. Simon, 161 N.J. 416, 444 (1999) (citing State v. Smullen, 118 N.J. 408, 416 (1990)). We review a trial court's Slater analysis under an abuse of discretion standard "because the trial court is making qualitative assessments about the nature of a defendant's reasons for moving to withdraw [their] plea and the strength of [their] case and because the court is sometimes making credibility determinations about witness testimony." State v. Tate, 220 N.J. 393, 404 (2015).

"The withdrawal of a guilty plea is not an 'absolute right,'" Simon, 161 N.J. at 444 (citation omitted), and the defendant bears the burden of establishing a basis for relief, Slater, 198 N.J. at 156. "[F]indings made by the trial court when accepting the plea, constitute a 'formidable barrier' which [a] defendant must overcome before [they] will be allowed to withdraw [their] plea." Simon, 161 N.J. at 444 (quoting Blackledge v. Allison, 431 U.S. 63, 74 (1977)). "That is so because '[s]olemn declarations in open court carry a strong presumption of verity.'" Ibid. (alteration in original) (quoting Blackledge, 431 U.S. at 74).

The PCR court correctly concluded defendant's proofs failed to establish a prima facie case his counsel was constitutionally ineffective under Strickland. Defendant's certification that plea counsel coerced him to plead guilty are bald assertions which are insufficient to sustain a claim of ineffective assistance of counsel. See Cummings, 321 N.J. Super. at 170. Additionally, defendant's claim counsel coerced him to plead guilty is contrary to the plea forms in which he indicated he was satisfied with counsel's advice, as well as the transcript of the plea hearing. While defendant asserts he "hesitated in taking his plea," it is clear from a review of the entire colloquy from that proceeding the court advised defendant of his right to proceed to trial, and that it would not accept the plea unless defendant acknowledged his guilt and that he committed the offenses.

Contrary to defendant's contentions, which are conclusory and contrary to the record, the text messages between himself and E.H. and A.D. do not contain any exculpatory information. Further, none of the phone call recordings reference defendant's abuse of A.D. and E.H. or that their allegations of sexual abuse were fabricated; they consist of nothing more than arguments between defendant and A.B. over his infidelity. Simply put, no evidence in the record contradicts the veracity of the victims' statements.

Additionally, defendant failed to establish "a reasonable probability that, but for counsel's errors, [he] would not have pled guilty and would have insisted on going to trial." Gaitan, 209 N.J. at 351 (quoting Nuñez-Valdéz, 200 N.J. at 139). As noted, nothing in the record supports defendant's claim of innocence, or that he possessed evidence that would support a defense to the charges or contradict the victims' statements. Further, as the PCR court astutely recognized, had defendant not pled guilty and been convicted of the sexual assault charge, he would have faced the possibility of a life sentence as he was extended term eligible. Instead, he received a five-year concurrent sentence on the separate and distinct endangering charges.

With respect to defendant's Slater-based arguments, because he sought to withdraw his plea after sentencing, he was required to establish doing so would correct a "manifest injustice." See O'Donnell, 435 N.J. at 368 (quoting R. 3:21-1). After considering the Slater factors in totality, we conclude the PCR court correctly found that defendant failed to meet his burden of proving that the denial of his motion to vacate constituted a manifest injustice. In this regard, we find most consequential defendant's lack of proof supporting a colorable claim of innocence. Slater, 198 N.J. at 158 (explaining "bare assertion[s] of innocence" are insufficient to support the withdrawal of a guilty plea and

16

"[d]efendants must present specific, credible facts and, where possible, point to facts in the record that buttress their claim"). As we noted, the text messages and phone call recordings defendant relies upon do not contain any exculpatory information.

To the extent not specifically addressed, defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

17                                                      A-3097-22